This suit is against B.O. Hall, the driver of a truck owned by his employer, T.E. Mercer, who is also a defendant in the suit, together with the Allied Underwriters, the liability insurance carrier for Mercer. The claim is for damages in the the sum of $11,993.50 for personal injuries, loss and expenses which plaintiff claims to have sustained as a result of being run over by a truck driven by said Hall in the course of his employment, a few miles west of Reeves, in Beauregard Parish, on U.S. Highway 190. Plaintiff's suit was dismissed below, and he has appealed from that judgment of dismissal.
Plaintiff, together with a helper, Robert Byers, had gone from his home in Covington in plaintiff's truck to Nacogdoches, Texas, on May 30, 1940, for the purpose of moving some furniture. They drove all of that day and reached their destination, loaded the furniture and started back in the early part of that night, driving all night. A little after 7 o'clock on the morning of the 31st, the gasoline in their truck gave out, and Dean, who was driving at the time, pulled his truck to the right and stopped it with the right wheels on the shoulder of the road and the left wheels on the pavement. He saw a truck coming from the opposite direction — that is coming from the east — which was the truck driven by Hall, and Dean got out of his parked truck and stepped out into the road and flagged the on-coming truck with his handkerchief for the purpose of stopping the approaching truck in order to get some gasoline. Dean was run over by the on-coming truck and suffered injuries to his left knee and his head, together with bruises and contusions on other parts of his body. Dean and Byers had alternated during the night in driving and had consumed about a half pint of whiskey by taking small drinks along the way, as Dean says, "to stimulate us".
The contention of the plaintiff is that Hall came over on his left side of the road *Page 94 
and struck him where he was standing flagging the on-coming truck; that Hall was negligent in failing to apply his brakes and stop his truck; in failing to pull his truck to the right and avoid striking plaintiff; in failing to blow his horn and in failing to have his truck under proper control. The defendants deny in their answer that Hall was guilty of any negligence and aver that the plaintiff was standing in Hall's traffic lane flagging the truck; that Hall saw him about 75 yards away and began to slow down; that when Hall got close to plaintiff, the latter got in front of the truck, and Hall pulled the truck to his right and onto the shoulder of the road.
As an alternative plea and in case it should be found that Hall was guilty of any negligence, the defendants pleaded the alleged acts of negligence on the part of plaintiff as set out above as a contributing cause of the accident.
The first important controverted fact is where plaintiff was standing on the highway when he was struck by the truck. Plaintiff testified that he was on the south side, some two or three feet from the center line; that the approaching truck was straddling the center line and did not change its course until it struck him and knocked him down; that the approaching truck began to slow down when he flagged it and the truck had slowed down to 10 or 12 miles per hour when it was within 50 or 75 feet of him; that he then thought the truck was going to stop, and he momentarily turned his head toward his truck, wondering how he would get the gasoline from the other truck to his truck, and before he again looked back at the approaching truck, it had struck him and knocked him down, rendering him unconscious; that he never moved his body from where he was standing flagging the approaching truck from the time the truck began to slow down until it struck him.
Byers, who was sitting in Dean's parked truck at the time of the accident, gave a little different version of the occurrence from that given by Dean. He testified that Dean walked out from his truck almost to the center of the highway, the distance being estimated at nine inches from the center line; that the approaching truck was coming from the east straddling the center line until it struck Dean at the point where he was standing flagging the truck; that Dean did not move out of his tracks nor did he turn his head as the truck was approaching and continued to look at the approaching truck, but this witness was not positive that Dean did not turn his head before the truck struck him.
Hall's version of the accident is that he was driving the heavily loaded truck on his right side of the road (the north traffic lane); he saw Dean flagging him at a distance of some 75 yards ahead; that Dean was standing in the north traffic lane, and he (Hall) put on his brakes to stop, and when he was about 40 feet from Dean, he realized that Dean was not going to step back on his side of the road and get out of the way; that he pulled his truck further to the right, and plaintiff continued to come in front of his truck, and the left part of the hood struck plaintiff and knocked him back, and he fell across the center line of the highway, with his feet across the line to the north and the rest of his body on the south side. He says that the left wheels of his truck were on the pavement when he struck plaintiff and the right wheels were on the shoulder; that his truck came to a stop on the shoulder of the road about 40 feet beyond where it struck plaintiff.
A Mr. Curd saw the accident from his place about 300 feet east of where it occurred. He testified that he saw Dean flagging the truck and standing near the center line; that the truck was on its proper side of the road and continued on that side; that the driver of the truck made what he calls a "swell" stop; that Dean continued to stand at what seemed to him near the center of the highway, but he could not see Dean as the truck got close to him because his view of him was cut off by the truck. He went to the scene of the accident and found Dean lying across the road slightly over the black line. The truck was pulled suddenly to its right and came to a stop on the north shoulder of the road.
There are several facts and circumstances which convince us that the accident could not have happened as Dean and his companion say it did.
In the first place, all the testimony shows that, after the accident, Dean's body was lying across the center line of the pavement with one or both feet on the north side. It seems to us that, had Dean been standing on the south side of the center line when struck, his body would have been entirely on that side, as the force of the blow was more likely to throw him to the *Page 95 
left, or south of the center, rather than to the north.
In the second place, if the truck driver was approaching from the east with his truck straddling the center line and continued that course, it is obvious that when Dean was struck, as he claims, on the south side of the center line, his body would have been thrown even further south than he was standing, and could not possibly have fallen with his feet across the center line to the north.
And in the third place, the testimony of Hall, the truck driver, is corroborated in several particulars as to the side of the road where plaintiff was struck; viz., the disinterested witness, Curd, testified that the truck was on the north, or its proper side of the road at all times. There is evidence showing that skid marks were made by the truck a few feet from the point where Dean was struck and these skid marks were all in the north traffic lane and led off onto the shoulder on the north side where the truck came to a stop after the accident.
However, we do not think that plaintiff could have been as far over on the north side of the road when he was struck as Hall claims he was, as it hardly seems reasonable that he could have been knocked from near the north side of the pavement and his body fall across the center line several feet to the left of the truck, particularly is this true if, as Hall says, his truck was pulling to the right when it struck plaintiff. Curd testified, as already stated, that plaintiff was standing near the center line as the truck approached, and the fact that plaintiff fell with his feet across the center line indicates to us that he was standing just over the center line to the north when he was struck.
Hall admits that he saw plaintiff standing in the highway flagging him at a distance of some 75 yards — more than 200 feet — and it is contended that he should have had his truck under better control when he approached plaintiff standing almost in front of him while he was traveling this distance. He probably assumed, as he had a right to assume, that plaintiff would step back on his side of the road before the truck reached him. The truck was heavily loaded, and it took some little distance to stop it. There was no negligence on the part of Hall in failing to sound his horn as plaintiff was not only aware of the approach of the truck, but he was actually trying to make it stop. Where a pedestrian is already aware of the approach of a motor vehicle and is actually observing the approach of the vehicle and trying to make it stop, the sounding of the horn would be a vain and unnecessary thing for the driver to do. Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., Vol. 1, § 711 p. 516.
Assuming that Hall was guilty of negligence in any of the respects charged to him, it is clear that plaintiff was guilty of the grossest kind of contributory negligence which was a contributing cause of the accident, whether his account of the accident is accepted or that of Hall. If plaintiff was standing just south of the center line, as he claims, and the truck was approaching astride the center line and continued to straddle the center line, and plaintiff continued to stand in his same position, it should have been obvious that the truck would strike him unless he stepped back or the truck pulled to its right. If he turned his head away from the approaching truck when it was only 50 or 75 feet from him, coming directly towards him, and he did not look at the truck any more, he was certainly guilty of such negligence as was a proximate cause of the accident.
And if he was on the north side of the road in the traffic lane of the approaching truck (as the facts and circumstances indicate that he was) and saw the truck approaching as he admits that he did, it was even greater negligence for him to stand there and get run over, even though he did not walk in front of the truck as Hall claims he did. A person who stands in the traffic lane of a heavily travelled highway and sees an automobile approaching him on its proper side of the road and makes no effort to get out of the way but turns his head in another direction under the assumption that the approaching vehicle will stop or miss him is assuming too much and taking too much of a chance for his own safety.
Plaintiff invokes the doctrine of last clear chance or discovered peril in case the court finds that he was guilty of contributory negligence. From the situation as it existed, it does not appear that Hall had the last clear chance to avoid the accident after he discovered, or should have discovered, that plaintiff was not going to get out of the way of the truck. As plaintiff was standing just over the center *Page 96 
line in Hall's traffic lane flagging the truck, the latter had a right to assume that he would get out of the way. Hall says that he discovered that plaintiff was not going to get out of the path of the truck when the truck was within 40 feet or so of the place where plaintiff was standing. No good reason appears as to why Hall should have discovered plaintiff's negligence sooner, and it is hardly conceivable how Hall could have done more than he did do to avoid striking plaintiff after he discovered his dangerous situation. He applied his brakes, pulled his truck to the right and onto the shoulder of the road. See Coleman et al. v. Terrebonne Ice Co., Inc. et al., La.App., 8 So.2d 313.
Finding no error in the judgment appealed from, the same is hereby affirmed.